UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61821-CIV-COHN/SELTZER

ELESEMA GONZALEZ,

    Plaintiff,

v.

NORTH BROWARD HOSPITAL
DISTRICT, DEXTER DORE,
CHRISTOPHER PITTS, MAXINE
JAMES-FRANCIS, DENISE
MORRIS, and JASMIN SHIRLEY,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant North Broward Hospital District's Motion to Dismiss Plaintiff's Amended Complaint [DE 6] and Defendants' Motion to Dismiss Plaintiff's Amended Complaint [DE 7] (together, "Motions"). The Court has carefully reviewed the Motions and all related filings. The Court also heard arguments from counsel at a motion hearing held on February 13, 2015.

**I.**    **Background**

    **A.**    **Facts**

During the time period relevant here, Plaintiff Elesema Gonzalez was employed by Defendant North Broward Hospital District (the "District") as a Dental Nurse. Defendants Dexter Dore, Maxine James-Francis, Denise Morris, and Jasmin Shirley (together, the "Individual Defendants") worked for the District in management positions.[1]

---

[1] Another named Defendant, Christopher Pitts, has not appeared in the case. The record indicates that Gonzalez may not have served Pitts with process.

Gonzalez claims that starting in 2010, she advised Dore and James-Francis that one of her coworkers, Christine Norgasse, was "repeatedly falling asleep during dental procedures while holding dental instruments in the patients['] mouths."  DE 1-2 at 14 (Am. Compl.).  According to Gonzalez, her "complaints were ignored and patients continued to be placed at risk because of Ms. Norgasse's habit of falling asleep."  Id.

Further, Gonzalez alleges that in late February 2012, she sent registered letters to five senior District officials, including Morris and Shirley, about her safety concerns regarding Norgasse.  Soon thereafter, Gonzalez was summoned to a meeting with all the Individual Defendants.  Gonzalez contends that instead of addressing the safety concerns she had raised, Defendants "proceeded to threaten not just Plaintiff's job, but her livelihood and licensure."  DE 1-2 at 15.  In particular, Gonzalez was "accused of misrepresenting herself as a Dental Nurse, which is the nomenclature for her work, when her [District] job classification was Dental Technician, a term used to describe persons engaged in the manufacture of false teeth[.]"  Id.  Because of these alleged threats from District officials, Gonzalez claims that she suffered "great mental and emotional distress."  Id.  These problems "compelled [her] to resign" on March 7, 2012.  Id.; see id. at 13 (asserting that Gonzalez "was forced to resign and constructively terminated by the defendants on March 7, 2012").

**B.     Procedural History**

Gonzalez originally brought this action in Broward County Circuit Court.  Her current Amended Complaint, filed in state court on July 30, 2014, pleads a § 1983 claim for violation of her First Amendment rights.  Gonzalez asserts that she "engaged in protected speech on a matter of public concern both orally and in writing in connection with complaints she made about patient safety."  DE 1-2 at 13; see id. at 14 (alleging

2

that her letters to District officials "constituted protected speech . . . in that they addressed matters of public concern and public safety and that she was speaking as a citizen"). Gonzalez further maintains that Defendants constructively discharged her in retaliation for this speech.

On August 11, 2014, the District removed Gonzalez's action to this Court. The District and the Individual Defendants later filed their present Motions. In both Motions, Defendants argue that Gonzalez cannot state a First Amendment retaliation claim because she was speaking as a government employee about issues relating to her job duties, not as a citizen on matters of public concern. The Individual Defendants also contend that they are entitled to qualified immunity, arguing that any First Amendment right violated here was not clearly established.

## II.     Discussion

### A.     Dismissal Standards

To withstand a Rule 12(b)(6) dismissal motion, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration, citations & internal quotation marks omitted).

At this stage in the litigation, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences therefrom in the plaintiff's favor. Id. at 555-56. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove the necessary facts. See id. Nonetheless, the court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.   District's Motion

The First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). The Supreme Court has "described a two-step inquiry into whether a public employee's speech is entitled to protection." Lane v. Franks, 134 S. Ct. 2369, 2378 (2014). In particular,

> The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

Garcetti, 547 U.S. at 418 (citations omitted); see Lane, 134 S. Ct. at 2378.

With regard to the first step, "Garcetti distinguished between employee speech and citizen speech." Lane, 134 S. Ct. at 2378. "Whereas speech as a citizen may trigger protection, the Court held that 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First

4

Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" Id. (quoting Garcetti, 547 U.S. at 421).  Thus, the Court in Garcetti found that "an internal memorandum prepared by a prosecutor in the course of his ordinary job responsibilities constituted unprotected employee speech." Id. (citing Garcetti, 547 U.S. at 424).

In Lane, the Court made clear that the "critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Lane, 134 S. Ct. at 2379.  The Court emphasized that "speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." Id.  Nor is it dispositive that such speech is made inside the workplace rather than publicly.  See Garcetti, 547 U.S. at 420.

Gonzalez has plausibly alleged that, in advising District officials of her patient-safety concerns regarding her coworker falling asleep on the job, she "spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418.  While Gonzalez's speech related to dental procedures that were part of her job duties, the speech itself was not "ordinarily within the scope of [her] duties." Lane, 134 S. Ct. at 2379.  In their Reply, Defendants claim that reporting safety concerns was one of Gonzalez's duties because a written District policy required all employees to do so.  See DE 14-1.  But even if that argument is properly before the Court, the existence of the general policy did not make reporting safety concerns an ordinary part of Gonzalez's responsibilities as a Dental Nurse.  See Lane, 134 S. Ct. at 2379.  More, the policy relied on by Defendants focuses on "Non-Retaliation," barring management from retaliating against

5

any employee who reports safety problems.  See DE 14-1 at 1.  Such retaliation is precisely what Gonzalez claims happened here.  For these reasons, Gonzalez's communications to District officials were made as a citizen rather than as an employee.

Gonzalez's speech was also on a matter of public concern.  "Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"  Lane, 134 S. Ct. at 2380 (quoting Snyder v. Phelps, 131 S. Ct. 1207, 1216 (2011) (internal quotation marks omitted)).  This inquiry "turns on the 'content, form, and context' of the speech."  Id. (quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983)).  Here, Gonzalez expressed serious concerns about the welfare of the District's dental patients because one of her coworkers repeatedly fell asleep while holding dental instruments in the patients' mouths.  Defendants do not contest that the potential injuries resulting from such dangerous behavior is a legitimate matter of public concern.  And Gonzalez continually raised these issues with senior District officials, both orally and through registered letters.  Indeed, a letter written by Gonzalez to an unknown District Vice President (attached to her original Complaint) shows that Gonzalez was conveying these problems as someone deeply concerned about the well-being of patients under the District's care.  See DE 1-2 at 8.

Last, Defendants offer no facts showing that the District "had an adequate justification for treating [Gonzalez] differently from any other member of the general public" who might speak about the same problems.  Garcetti, 547 U.S. at 418.  Therefore, Gonzalez has stated a plausible claim for First Amendment retaliation, and the District's Motion to Dismiss will be denied.

### C. Individual Defendants' Motion

The Court now turns to the Individual Defendants' argument that they are entitled to qualified immunity for any First Amendment violation here. "To receive qualified immunity, [a] public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (internal quotation marks omitted). If the official makes this showing, the burden shifts to the plaintiff to overcome the privilege of qualified immunity. See Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009). To meet this burden, the plaintiff must prove (1) that the defendant violated a statutory or constitutional right and (2) that this right was "clearly established at the time of the challenged conduct." Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Although "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011).

The parties do not dispute that the Individual Defendants were acting within the scope of their discretionary authority when they allegedly threatened Gonzalez in a meeting after she reported patient-safety issues. Gonzalez therefore must show that the particular First Amendment right the Individual Defendants violated was clearly established in early 2012, when their alleged unlawful conduct occurred. This she cannot do.

Gonzalez not only has failed to cite "a case directly on point" but also has not proven that the law at that time placed "beyond debate" the constitutional question

7

raised here: Did the First Amendment prohibit a public-hospital official from taking adverse action against an employee for reporting patient-safety concerns, when those problems related to the employee's job duties, but reporting them was not ordinarily within the scope of her work? Before the Supreme Court decided Lane in June 2014, some Eleventh Circuit opinions arguably suggested that statements having any tangible connection with the plaintiff's work were employee speech rather than citizen speech. See, e.g., Abdur-Rahman v. Walker, 567 F.3d 1278, 1286 (11th Cir. 2009) ("We cannot separate the statements the inspectors made from the official responsibilities to which those expressions were related."); Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007) (per curiam) (focusing on "whether a government employee's speech relates to his or her job as opposed to an issue of public concern"); Battle v. Bd. of Regents for Ga., 468 F.3d 755, 761 n.6 (11th Cir. 2006) (per curiam) ("The issue in Garcetti was whether a public employee was speaking pursuant to an official duty, not whether that duty was part of the employee's everyday job functions."). Indeed, Lane itself overruled one of these decisions, though ultimately affirming on qualified-immunity grounds. See Lane v. Cent. Ala. Cmty. Coll., 523 F. App'x 709 (11th Cir. 2013) (per curiam). Because the constitutional violation alleged by Gonzalez would not have been clear to a reasonable official in early 2012, the Individual Defendants are protected by qualified immunity, and their Motion to Dismiss will be granted on that basis.

### III. Conclusion

For the reasons discussed, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant North Broward Hospital District's Motion to Dismiss Plaintiff's Amended Complaint [DE 6] is **DENIED**;

2. Defendant North Broward Hospital District shall file an Answer to Plaintiff's Amended Complaint by **March 3, 2015**;

3. Defendants' Motion to Dismiss Plaintiff's Amended Complaint [DE 7] is **GRANTED** on the basis that the Individual Defendants are entitled to qualified immunity;

4. Plaintiff's claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**;

5. For the reasons discussed on the record during the motion hearing, the Court will continue the existing trial date and extend the pretrial deadlines accordingly. Trial is hereby reset for the **two-week period** commencing **August 17, 2015**, or as soon thereafter as the case may be called.  Calendar call is rescheduled for **August 13, 2015**; and

6. The following amended pretrial deadlines shall now apply in this case:

| | |
|---|---|
| Discovery cutoff | May 29, 2015 |
| Dispositive pretrial motions and motions to exclude or limit expert testimony | June 12, 2015 |
| Mediation completed | June 19, 2015 |
| Motions in limine | July 30, 2015 |
| Responses to motions in limine, joint pretrial stipulation, and deposition designations for trial for unavailable witnesses | August 7, 2015 |
| Proposed jury instructions, voir dire questions, and objections to deposition designations and/or | Calendar Call |

9

counter-designations

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 17th day of February, 2015.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF